IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TABATHA WERKMEISTER, individually and on behalf of her minor sons, J.J.W., J.M.W. and D.W. and her minor daughter, A.W., and GRINAGE DION WILSON, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| CITY OF PITTSBURGH, ACTING CHIEF OF POLICE REGINA McDONALD, LEUTENANT JOSEPH TERSAK, OFFICER MICHAEL COLEMAN, OFFICER ERIC ENGELHARDT, OFFICER RONALD YOSI, OFFICER JEFFERY GARRIS, OFFICER DANIEL HARTUNG, OFFICER JASON HALL, OFFICER DAVID BLAHUT, OFFICER THEODORE GEYSER, OFFICER CHAD O'BRIEN | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

C. A. No. 15-cv-01069

Jury Trial Demanded

**FIRST AMENDED COMPLAINT IN CIVIL ACTION**

**I)   INTRODUCTION**

1)   This complaint alleges that the civil rights of plaintiffs Tabatha Werkmeister, Grinage Dion Wilson and their four children were violated when members of the City of Pittsburgh SWAT team illegally and without a warrant or other legal justification, broke down the door to their apartment, forcibly removed them, including their four children aged 2 through 9 years old and detained them at gunpoint in the back of an unheated truck for 30-45 minutes in sub-freezing temperatures. The officers offered no warrant or other justification for the raid, but instead admonished them for not having a number on their door. This complaint alleges that the officers were aware that there was a substantial

likelihood that they were entering the wrong home, yet nevertheless proceeded with a full raid and search of the premises.  The complaint further alleges that the City of Pittsburgh and its SWAT officers have a policy and practice of using the SWAT team to perform routine police work and that this policy dramatically increases the risk that law abiding individuals will be subjected to overwhelming and excessive force at the hands of the police.  Plaintiffs allege that this conduct violated their constitutionally protected rights to be free from unreasonable searches, seizures, and excessive force by those acting under color of state law.

**II)     JURISDICTION**

2)     This court has jurisdiction over plaintiffs' claims against the above-referenced defendants pursuant to 28 U.S.C. §1343 and/or 28 U.S.C. §1331.

**III)    PARTIES**

3)     Plaintiff Tabatha Werkmeister is an adult resident of the City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.  Tabatha Werkmeister brings this lawsuit individually and on behalf of her minor children, J.J.W., J.M.W., A.W. and D.W.

4)     Plaintiff Grinage Dion Wilson is an adult resident of the City of Pittsburgh, County of Allegheny, Commonwealth of Pennsylvania.  He is the natural father of J.M.W, A.W. and D.W.

5)     Defendant City of Pittsburgh is a municipality within the Commonwealth of Pennsylvania, with a principal place of business located at 414 Grant Street, Pittsburgh, Pennsylvania 15219, which at all times relevant hereto, was authorized to and did operate and maintain a police department.  Defendant City of Pittsburgh was acting by and through its duly authorized agents, employees and/or assigns, who

were then and there acting within the course and scope of their employment under the color of state law and in accordance with the custom, policies and practices of the City of Pittsburgh.

6) Defendant Regina McDonald, was, at all times relevant hereto, the acting Chief of Police of the City of Pittsburgh Bureau of Police.  She is sued in her individual capacity.  This defendant, at all times relevant hereto, had the day-to-day responsibility to ensure that City of Pittsburgh police officers were properly trained, supervised, and disciplined, and also, at all times relevant hereto, had knowledge, and/or was on notice, that City of Pittsburgh police officers had been the subject of numerous civil rights complaints involving excessive force and/or unreasonable searches and seizures.  This defendant was also aware that City of Pittsburgh police officers engage in a custom, policy and/or practice of engaging in excessive force and/or making unreasonable searches and seizures.  Despite such knowledge, this defendant failed to take action to stop and/or otherwise acquiesced in such custom, practice or policy.

7) Defendant Joseph Tersak is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh.  At all times relevant, Defendant Tersak was acting as SDD (Special Deployment Division) Supervisor and was directly responsible for the actions of the SWAT team at Plaintiffs' residence including, but not limited to, the decision to execute the warrant on Plaintiffs' door.

8) Officer Michael Coleman is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. At all times relevant, Defendant Coleman was acting as Incident Commander with regard to the SWAT raid on Plaintiffs' house.

9) Officer Ronald Yosi is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. At all times relevant hereto, Defendant Yosi was acting and Tactical Commander with regard to the raid on Plaintiffs' home. On information and belief Defendant Yosi entered Plaintiffs' home without a warrant.

10) Officer Eric Engelhardt is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. At all times relevant hereto, Defendant Engelhardt was acting as a SWAT Team Leader. On information and belief Defendant Engelhardt participated in the decision to execute the warrant on Plaintiffs' door.

11) Officer Jeffery Garris is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and

in accordance with the custom, practices and/or policies of the City of Pittsburgh. At all times relevant hereto, Defendant Garris was acting as a SWAT Team Leader. On information and belief Defendant Garris participated in the decision to execute the warrant on Plaintiffs' door.

12) Officer Larry Mercurio is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. At all times relevant hereto, Defendant Mercurio was acting as a Lead Scout. On information and belief, Defendant Mercurio ordered the SWAT team to break through or breach Plaintiffs' door.

13) Officer Daniel Hartung is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. On information and belief, Defendant Hartung was the individual responsible for knocking and announcing the presence of officers prior to entering Plaintiffs' apartment.

14) Officer Jason Hall is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. On information and belief, Defendant Hall is the individual who breached, or knocked down, plaintiffs' door.

15) Defendant Theodore Geyser is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. On information and belief, Defendant Geyser was one of the individuals who entered Plaintiffs' home and carried the minor plaintiffs to the truck.

16) Officer David Blahut is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. On information and belief, Defendant Blahut was one of the individuals who entered Plaintiffs' home and carried the minor plaintiffs to the truck.

17) Officer Chad O'Brien is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was employed as City of Pittsburgh police officer and who, with respect to the events alleged herein, was acting under the color of state law and in accordance with the custom, practices and/or policies of the City of Pittsburgh. On information and belief, Defendant O'Brien entered Plaintiffs' home without a warrant in connection with the SWAT raid.

**IV) FACTS**

18) On the morning of January 25, 2014, plaintiffs Tabatha Werkmeister, Grinage Dion Wilson, J.J.W., J.M.W., A.W. and D.W. were lawful residents of 3517 Fleming Avenue Unit 2.

19) 3517 Fleming Avenue is a three story house comprised of two units. The downstairs unit (Unit 1) is on the first floor. The upstairs unit (Unit 2) is on the second and third floors. Both units have entry doors on the front of the house. The door to the upstairs unit opens directly into a small hallway and a flight of stairs which leads up to the apartment.

20) On the morning of January 25, 2014, plaintiffs Tabatha Werkmeister, Grinage Dion Wilson, A.W. (6 Years old) and D.W. (2 years old) were asleep on the second floor of the upstairs unit.

21) Plaintiffs J.J.W. (9 years old), and J.M.W. (7 years old) were asleep on the first floor of the upstairs unit.

22) At approximately six o'clock AM defendants, dressed in body armor and armed with assault rifles, broke down the door to the upstairs unit, threw a smoke bomb into the hallway and entered.

23) Plaintiff Werkmeister was awakened by the commotion and ran downstairs. She saw the officers in front hallway and told them she needed to get her children.

24) While Werkmeister was upstairs getting A.W. and D.W., defendant officers removed plaintiffs J.J.W. and J.M.W. from the unit.

25) The children were taken barefoot through the snow to a SWAT truck. The children were in their sleep clothes. Plaintiff J.J W. had no shirt on. Plaintiff J.M.W. wore underwear and a shirt, but no pants.

26) The children were placed inside the back of the SWAT van and an armed SWAT officer stood outside the door.

27)     There was no heat in the truck and it was extremely cold.  The temperature in Pittsburgh at 6:00 am on January 25 was approximately 20 degrees.

28)     Werkmeister retrieved A.W. and D.W. from the second floor of the unit.  She came downstairs carrying D.W. and was followed by Wilson who was holding the hand of A.W.

29)     The officers pushed A.W. out of the way, pointed their guns at Wilson and told him to put his hands up.  They demanded to know who he was.

30)     Werkmeister immediately noticed that her sons were gone and began frantically asking "Where are my boys?  Where are my boys?"

31)     One of the officers told her that they were "in the truck."

32)     Werkmeister, Wilson, D.W. and A.W. were removed from the home at gunpoint and forced to walk barefoot through the snow to the truck.  They were placed inside the truck with the children plaintiffs.

33)     As plaintiff Werkmeister was being taken to the truck, a SWAT officer asked her whether she knew "Marlo."  She said no.  She believed this might be the individual who lived in the downstairs unit, but she did not know him.

34)     An officer dressed in SWAT gear and holding an assault rifle continued to guard the door to the truck.  It was clear to plaintiffs that they were not free to leave.

35)     There were no blankets in the truck, nor any other means for Werkmeister to keep her children warm.  She gave the baby, A.W., to Wilson, and then attempted to warm her other children by laying on them and/or rubbing their arms and legs with her hands.

36) Plaintiffs Werkmeister and Wilson asked the officer guarding the truck for blankets to warm the children.

37) After approximately twenty minutes the officer gave them a blanket that had been taken from their home.

38) Plaintiffs remained in the truck for another fifteen to twenty minutes before they were taken out of the truck, again taken barefoot through the snow, and placed back in their home.

39) When they entered the home there were officers milling about.

40) One of the defendant officers told Werkmeister that she should have numbers on her door. He then gave her a number to call to have her door fixed and left.

41) Plaintiffs were never given or shown a copy of any warrant.

42) No drugs or other contraband were found in the house and none of the plaintiffs were arrested or charged with any crime.

43) No officer explained to Werkmeister or Wilson the reason for the raid on their home and extended detention of their family.

44) No officer apologized to plaintiffs for invading their home, breaking down their door or terrorizing their family.

45) All of the plaintiffs were significantly traumatized by the unwarranted invasion into their home by numerous armed police officers.

46) The children plaintiffs are now frightened of police officers. The children stated to plaintiff Werkmeister that if they were in trouble they would not call 911 or their grandmother (who is a lieutenant with the Pittsburgh Police) for help because they are afraid.

47) Plaintiff A.W. has refused to approach her grandmother when her grandmother is in uniform.

48) On information and belief, Defendants did not have a warrant to search the upstairs apartment located at 3517 Fleming Avenue in Pittsburgh, Pennsylvania.

49) Defendants had no probable cause to believe that any of the residents of the upstairs unit of 3517 Fleming Avenue were engaged in any illegal activity, or that any exigent circumstances justified entry into plaintiffs' residence.

50) On information and belief, if Defendants had a warrant or other justification to enter the premises of 3517 Fleming Avenue at all, any such justification applied only to the downstairs unit.

51) On information and belief, Defendants Tersak, Coleman, Engelhardt, Yosi, Garris, Hartung, Hall, Blahut, Geyser, and O'Brien [Officer Defendants] upon arriving at 3517 Fleming Avenue, were uncertain which door led to the unit they were authorized to enter.

52) On information and belief, Officer Defendants made no effort to determine whether plaintiffs' door was, in fact, the door that led to the premises they were authorized to enter.

53) Officer Defendants were aware, when they entered plaintiffs' unit, that there was substantial and unjustified risk that they were subjecting innocent individuals to the overwhelming and terrorizing show of governmental force inherent in a SWAT raid.

54) Officer Defendants should have known, immediately upon entering plaintiffs' residence and encountering stairs, that they were entering an apartment for which they had no warrant or other basis for entry.

55) On information and belief, Defendants City of Pittsburgh and McDonald have a policy and/or practice of using the SWAT team to perform routine police work, for which the overwhelming show of force inherent in a SWAT raid is unnecessary and excessive.

56) This policy of using SWAT raids for routine police work dramatically increases the risk that innocent individuals will be exposed to SWAT raids and subjected to excessive and unconstitutional force in violation of their fourth and fourteenth amendment rights.

57) Defendants McDonald and City of Pittsburgh were aware of this custom, practice or policy and the resultant constitutional violations and either expressly approved it or failed to take action to stop it.

58) As a direct result of the defendants' conduct as hereinbefore described, plaintiffs have suffered severe emotional distress, embarrassment, humiliation, damage to their reputation, psychological trauma, and other emotional sequelae associated with the events of January 25, 2014.

59) As a direct result of the conduct of defendants Coleman, Yosi, Englehardt, Garris, Mercurio, Hartung, Hall, Geyser, Blahut, and O'Brien in ordering entry and/or physically entering Plaintiffs' home with the knowledge that there was a substantial and unjustified risk that they were entering a home which they had no legal authority to enter, all plaintiffs have suffered a violation of their right to privacy in the sanctity of their home and a violation of their right to be free from unreasonable searches, as protected by the Fourth Amendment to the United States Constitution and made actionable by 42 USC §1983.

60) As a direct result of the conduct of defendants Hartung and Hall, in entering Plaintiffs' home without first knocking and announcing their presence, all plaintiffs have suffered a violation of their right to privacy in the sanctity of their home and a violation of their right to be free from unreasonable searches, as protected by the Fourth Amendment to the United States Constitution and made actionable by 42 USC §1983.

61) As a direct result of the conduct of defendants Coleman, Yosi, Englehardt, Garris and Mercurio, in ordering that Plaintiffs be removed from their home and confined in the back of a truck, and/or participating in these actions, all plaintiffs suffered violations of their fourth amendment rights to be free from unreasonable seizures as protected by the Fourth Amendment to the United States Constitution and made actionable by 42 USC §1983.

62) As a direct result of the conduct of Defendants Geyser and Blahut in physically removing minor plaintiffs J.J.W and J.M.W. from the home and confining them in the back of a truck, minor plaintiffs J.J.W and J.M.W. suffered violations of their fourth amendment rights to be free from unreasonable seizures as protected by the Fourth Amendment to the United States Constitution and made actionable by 42 USC §1983.

63) As a direct result of the conduct of defendants Coleman, Yosi, Englehardt, Garris, Mercurio, Hartung, Hall, Geyser, Blahut, and O'Brien in using a SWAT team to exercise a routine search for which the overwhelming show of force inherent in a SWAT raid was unnecessary and excessive, all plaintiffs suffered a violation of their rights to be free from excessive force as protected by the Fourth Amendment to the United States Constitution and made actionable by 42 USC §1983.

64) As a direct result of the conduct of defendants Coleman, Yosi, Englehardt, Garris, Mercurio, Hartung, Hall, Geyser, Blahut, and O'Brien in using the a SWAT team to conduct a raid and exercise a warrant at Plaintiffs' home when they were aware that there was a substantial and unjustified risk that Plaintiffs' home was not the authorized target of the warrant, all Plaintiffs suffered a violation of their rights to be free from excessive force as protected by the Fourth Amendment to the United States Constitution and made actionable by 42 USC §1983.

65) As a direct result of the conduct of defendants Coleman, Yosi, Englehardt, Garris, Mercurio, Hartung, Hall, Geyser, Blahut, and O'Brien in witnessing the aforementioned violations of Plaintiffs' rights and failing to intervene to stop them, Plaintiffs suffered violations of their rights protected by the Fourth Amendment to the United States Constitution as described above.

66) As a direct result of the conduct of Defendants McDonald and the City of Pittsburgh in authorizing, condoning and/or failing to take adequate action to stop the policy and practice of City of Pittsburgh police officers using the SWAT team to conduct routine police work for which such overwhelming force is unnecessary and excessive, plaintiffs have suffered a violation of their Fourteenth Amendment rights which encompass the right to be free from arbitrary and capricious governmental action, including practices and/or policies which evidence deliberate indifference to the violation of constitutional rights, including rights protected under the Fourth Amendment to the United States Constitution. Plaintiffs' Fourteenth Amendment claims are made actionable by 42 USC §1983.

WHEREFORE, plaintiffs request judgment in their favor for compensatory and/or punitive damages against the individually named defendants, compensatory damages against the defendant City of Pittsburgh and the award of costs and attorneys' fees against all defendants and such other relief as this Court deems appropriate and/or equitable under the circumstances.

                                                        Respectfully submitted,

                                                        <u>/s/ Margaret S. Coleman</u>
                                                       Margaret S. Coleman, Esq.
                                                       PA I.D. #200975

                                                       Law Offices of Timothy P. O'Brien
                                                       1705 Allegheny Building
                                                       429 Forbes Avenue
                                                       Pittsburgh, PA  15219

                                                       Attorney for Plaintiffs